# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CYNTHIA STERBA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:24-cv-2084 |
| ) | |
| ) | |
| LIFE CARE CENTERS OF AMERICA, INC. ) | **JURY TRIAL DEMANDED** |
| Serve Registered Agent: ) | |
| Corporate Services Company ) | |
| 1100 SW Wanamaker Rd., Ste. 103 ) | |
| Topeka, KS 66604 ) | |
| ) | |
| and ) | |
| ) | |
| OSAWATOMIE HEALTH CARE, LTD., ) | |
| Serve Registered Agent: ) | |
| Corporate Services Company ) | |
| 1100 SW Wanamaker Rd., Ste. 103 ) | |
| Topeka, KS 66604 ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

COMES NOW Plaintiff Cynthia Sterba, by and through the undersigned counsel, and states and alleges for her Complaint against Defendants Life Care Centers of America, Inc. and Osawatomie Health Care, Ltd. and as follows:

## NATURE OF THE CASE

1. This is an action for relief to address the wrongful termination of Plaintiff by Defendants, in violation of Kansas law and public policy. Plaintiff seeks damages as a result of her wrongful termination, including compensatory damages and punitive damages.

1

## **PARTIES**

2. Plaintiff Cynthia Sterba is and was at all times relevant to the allegations contained herein, domiciled in the state of Kansas and a citizen of Kansas, who worked for Defendants at one of their long-term-care facilities which was located in Osawatomie, Kansas.

3. Plaintiff at all times relevant herein, held the positions of interim Executive Director and/or Director of Nursing for Defendants. At the time of Plaintiff's termination by Defendants, she held the position of Director of Nursing.

4. At all times relevant herein, Plaintiff was jointly employed by Defendants Life Care Centers of America, Inc. ("Life Care Centers") and Osawatomie Health Care, Ltd. ("Osawatomie").

5. Defendant Life Care Centers of America, Inc. is a Tennessee Corporation, whose principal place of business is in Tennessee, and Defendant Life Care is authorized to and conducts business in the State of Kanas.

6. Defendant Life Care Centers is a citizen of Tennessee.

7. Based on information and belief, Osawatomie Health Care, Ltd. is Georgia limited partnership, and Defendant Osawatomie is authorized to and conducts business in the State of Kansas.

8. Based on information and belief, Osawatomie Health Care Ltd.'s only general partner is Consolidated Resources Health Care Fund 1 LP.

9. Consolidated Resources Health Care Fund 1 LP is a Georgia limited partnership.

10. Based on information and belief, the general partners of Consolidated Resources Health Care Fund 1 LP are (1) CRHC, LLC, and (2) H.C.F. Inc.

11. H.C.F., Inc. is a Tennessee corporation with its principal place of business in Tennessee, and H.C.F. Inc. is a citizen of Tennessee.

12. Based on information and belief, all members of CRHC, LLC are citizens of Tennessee and, therefore, CRHC, LLC and any members are citizens of the state of Kansas.

13. Based on information and belief, all members of Consolidated Resources Health Care Fund 1 LP are citizens of Tennessee.

14. Therefore, based on information and belief, Defendant Osawatomie is a citizen of Tennessee.

## JURISDICTION AND VENUE

15. The subject matter jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1332 because there is complete diversity between Plaintiff and Defendants, and the amount in controversy exceeds $75,000.00, thereby satisfying the requirements of diversity jurisdiction.

16. This Court has personal jurisdiction over the Defendants as Defendants employed Plaintiff in Kansas, the individuals who terminated Plaintiff's employment were employed by Defendants in Kansas, Defendants transacted business in Kansas, and all or a substantial portion of the acts occurred in Kansas.

17. Venue is proper in this Court because all or a substantial part of the alleged acts, omissions and occurrences giving rise to the claims alleged herein occurred at Defendants' place of business in Osawatomie, Kansas.

## FACTUAL ALLEGATIONS

18. Plaintiff began her employment with Defendants in April of 2023 and was employed until her termination on January 31, 2024.

19. Plaintiff began her employment in the position of Director of Nursing, but held the position of Interim Executive Director from September 5, 2023 – September 25, 2023, and from October 13, 2023 – December 20, 2023.

20. Plaintiff returned to the position of Director of Nursing in late December of 2023, following the hiring of Kathleen Simpson for the position of Executive Director.

21. At the time of Plaintiff's termination, she held the position of Director of Nursing for Defendants.

22. From in or about August of 2023, through the end of Plaintiff's employment, she made several internal reports about issues within Defendants' facility that she believed constituted public health and safety violations.

23. From in or about August of 2023, through the end of Plaintiff's employment, Plaintiff also documented the violations with photographs, and worked with outside contractors to address maintenance issues that were public health and safety violations within Defendants' facility.

24. In or about January of 2024, many health and safety issues still remained that caused Plaintiff concern. These issues included, but were not limited to, fire hazards, black mold, tripping hazards, and lack of hot water for residents.

25. Additionally, in or about mid-January of 2024, Plaintiff reported and documented a large hole in the kitchen ceiling that resulted from a water pipe burst which posed a public health, safety, and general welfare concern.

26. In light of Defendants' failure to remedy the various public health, safety and general welfare issues/violations, Plaintiff made an outside complaint to the Department of Labor

who directed her to report the health and safety issues to the Department of Aging and Disability, and to the Department of Occupational Health and Safety (OSHA).

27. Plaintiff's reports to these outside agencies were made on or about January 21, 2024, and included alleged violations of 29 CFR §1910.303(b)(2); 29 CFR §1910.303(b)(6); 29 CFR §1910.22(a)(3); 29 CFR §1910.37(a)(4); 29 CFR §1910.37(b)(6) and 29 CFR §1910.37(a)(3).

28. On January 23, 2024, a representative from the Department of Aging and Disability came to Defendants' facility to conduct an investigation. One of the issues the auditor discussed with Plaintiff was the picture of the hole in the kitchen ceiling. Plaintiff had previously provided this photo to Executive Director Kathleen Simpson.

29. Based on information and belief, some of the same documentation/evidence that Plaintiff had previously presented to Kathleen Simpson was also presented to Ms. Simpson by the auditor.

30. The auditor concluded the inspection on January 25, 2024. Although there were still health/safety issues that needed to be addressed, the auditor issued a finding of no deficiencies.

31. Plaintiff was off work due to illness on January 29, 2024.

32. When Plaintiff returned to work on January 30, 2024, she was presented with an "educational acknowledgement" by the Regional Nurse. Based on information and belief, no other nurses were given a similar "educational acknowledgment."

33. Prior to January 30, 2024, Plaintiff had not received any "educational acknowledgment" or written counsel/discipline.

5

34. An OSHA representative visited Defendants' facility on January 31, 2024, to conduct an inspection.

35. Plaintiff was terminated that same day, January 31, 2024, by Executive Director Kathleen Simpson, and Regional VP of Operations Katie Campbell. The alleged reason for Plaintiff's termination was that the "company was going in a different direction."

36. Plaintiff's termination occurred approximately a week after the Department of Aging and Disability conducted an inspection of Defendants' facility based on the public health, safety, and general welfare complaints reported by Plaintiff.

37. Plaintiff's termination occurred the same day OSHA visited Defendants' facility for an inspection based on the health and safety complaints reported by Plaintiff.

38. Based on information and belief, Defendants was aware of Plaintiff's complaints to outside agencies regarding public health, safety, and general welfare violations at the time Plaintiff was terminated.

39. At all times mentioned herein, the above referenced individuals were employees, agents, servants and/or agents of Defendants, and were acting within the course and scope of their employment, and/or their actions were expressly authorized or ratified by Defendants, making Defendants liable under the doctrine of respondeat superior.

## COUNT I
## Wrongful Termination in Violation of Public Policy

40. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

41. Plaintiff made complaints to outside agencies responsible for the oversight of Defendants' facilities on or about January 21, 2024.

42. Plaintiff's complaints to the outside agencies included issues that constituted health and safety violations within Defendants' facility, including but not limited to, fire hazards, tripping hazards, black mold and lack of hot water, and encompassed within 29 CFR §1910.303(b)(2); 29 CFR §1910.303(b)(6); 29 CFR §1910.22(a)(3); 29 CFR §1910.37(a)(4); 29 CFR §1910.37(b)(6) and 29 CFR §1910.37(a)(3).

43. These complaints were reports of infractions of rules, regulations, or the law pertaining the public health, safety, and the general welfare.

44. Plaintiff's complaints were done in good faith based on concern regarding the wrongful activity reported.

45. On January 23, 2024, the Department of Aging and Disability visited Defendants' facility to conduct an inspection following the complaints made by Plaintiff of health and safety violations.

46. On January 31, 2024, OSHA visited Defendants' facility to conduct an inspection following the complaints made by Plaintiff of health and safety violations.

47. Plaintiff was terminated on January 31, 2024, less than a week after the Department of Aging and Disability visited Defendants' facility to perform its audit/inspection and on the same day as OSHA's visit.

48. Prior to Plaintiff's termination, she had served in the position of interim Executive Director and had no performance or discipline issues. Plaintiff was given her first and only "educational acknowledgment" on January 30, 2024, which was just days after the inspection by the Department of Aging and Disability.

49. Based on information and belief, Defendants had knowledge of Plaintiff's reporting of these violations to outside agencies prior to its termination of Plaintiff's employment.

50. Based on information and belief, Defendants were aware, prior to Defendant's termination of Plaintiff's employment, that it was Plaintiff who was responsible for triggering the inspection/audit by the Department of Aging and Disability and OSHA.

51. Based on information and belief, Plaintiff was retaliated against and terminated by Defendants because of her complaints regarding concerns about public health, safety, and the general welfare to outside agencies that were responsible for the oversight of Defendants' facilities.

52. Plaintiff's acts of reporting these violations of rules, regulations, or laws relating to the public health, safety, and general welfare to outside agencies were acts protected by the public policy of the State of Kansas.

53. Based on information and belief, Defendants violated Kansas law and public policy when they terminated Plaintiff's employment.

54. The actions of Defendants were retaliatory and a violation of Kansas law and public policy.

55. As a direct and proximate cause of the alleged conduct of Defendants, Plaintiff has incurred and will continue to incur lost wages, lost benefits and emotional distress.

56. The actions set forth herein were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff, and therefore Plaintiff is entitled to punitive damages from Defendants to punish and deter Defendants and others from like conduct.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendants on Count I of the Complaint, for an award of compensatory damages in excess of $75,000, including past and future lost wages, lost benefits, and emotional distress, front pay, pre- and post-judgment interest as provided by law, her costs expended, and for such further and equitable relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues pursuant to Federal Rule of Civil Procedure 38.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby designates the United States District Court for the District of Kansas, located in Kansas City, Kansas as the place of trial.

Respectfully submitted,

**HOLMAN SCHIAVONE, LLC**

By: */s/ Anne W. Schiavone*
Anne W. Schiavone, KS Bar #19669
Brandon Corl, KS Bar #23043
4600 Madison Avenue, Suite 810
Kansas City, Missouri 64112
Telephone: 816.283.8738
Facsimile: 816.283.8739
aschiavone@hslawllc.com
bcorl@hslawllc.com

**ATTORNEYS FOR PLAINTIFF**